IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSE EDUARDO SERRANO,

      Petitioner,

      v.                              Case No.  04-3485-JWL

ROGER WERHOLTZ,

      Respondent.

_____

**MEMORANDUM AND ORDER**

Petitioner Jose Eduardo Serrano was convicted in Kansas state court of aiding and abetting rape, endangering a child, furnishing alcohol to a minor, and sexual exploitation of a child, and he was sentenced to 272 months in prison.  Mr. Serrano brings this habeas corpus petition pursuant to 28. U.S.C. § 2254 (Doc. # 1).  In his petition, Mr. Serrano argues that he was denied effective assistance of counsel at his jury trial because his counsel failed to seek a voluntary intoxication jury instruction as a defense against the charges of aiding and abetting rape and sexual exploitation of a child.  The court denies Mr. Serrano's habeas petition because the Kansas Court of Appeals' holding was not unreasonable when it found that trial counsel's performance was not deficient, as counsel used a reasonable strategy to defend Mr. Serrano.

**Background**

This case arose out of the investigation of an impromptu late night party in Lawrence, Kansas that was attended by Mr. Serrano, who was 20 years old at the time, and several male and female teenagers, including the thirteen year old victim M.L.[1]  Testimony at trial from witness to witness and with some witnesses, from one statement to the next, was both conflicting and confusing.  It is undisputed, however, that both M.L. and Mr. Serrano became intoxicated on the evening in question.

During trial, certain elements of the testimony supported the prosecution's allegations that at least one of the juvenile males digitally penetrated M.L. at the suggestion and/or instruction of Mr. Serrano; that Mr. Serrano supplied alcohol to M.L. and promised to provide more alcohol to her if she would give "lap dances" to the boys; and that Mr. Serrano refused to allow one of M.L.'s friends to obtain medical attention for M.L. when she began to vomit.

M.L. had no recollection of the rape or rapes, but when she awoke the next day, she had unexplained soreness in her vaginal area and two partygoers told her at least some of what had happened to her.

Mr. Serrano was charged with rape, aggravated intimidation of a witness, aiding and abetting rape, sexual exploitation of a child, endangering a child and furnishing alcohol to a

---

[1] The court will adopt the state court's factual findings. *Turrentine v. Mullin,* 390 F.3d 1181 (10th Cir. 2004) (The state court's factual findings are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence).

minor. At trial, his defense was that he had ingested alcohol and two prescription drugs, Zyban and Wellbutrin, on the night of the party, making him far too impaired to have had the physical capacity to commit the crimes. Mr. Serrano was acquitted of the rape and aggravated intimidation of a witness charges, but found guilty of the other charges.

**Standard**

Because Mr. Serrano filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), the provisions of the AEDPA govern this case. *Jackson v. Ray,* 390 F.3d 1254, 1259 (10th Cir. 2004). Under the AEDPA, the court "must defer to a state court decision adjudicated on the merits unless that decision: (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.' " *Id.* (quoting 28 U.S.C. § 2254(d)(1)- (2)).

In this case, the Kansas Court of Appeals adjudicated the merits of petitioner's claims and identified the appropriate legal principles, and therefore this court's review is limited to determining whether the appeals court's decision was an unreasonable application of those legal principles or whether it was based on an unreasonable determination of the facts in light of the evidence presented. Under the "unreasonable application" prong, a state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). A state

court decision does not satisfy this standard merely because it is incorrect or erroneous; rather, the state court's application of the law must have been objectively unreasonable. *Jackson,* 390 F.3d at 1254. The state court's factual findings are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Turrentine v. Mullin,* 390 F.3d 1181 (10th Cir. 2004); *Young v. Workman,* 383 F.3d 1233, 1236 (10th Cir. 2004). In conducting this analysis, this court's ruling must rest on the propriety of the state court's decision, not its rationale. *Jackson,* 390 F.3d at 1254 (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999)).

**Analysis**

Sixth Amendment ineffective assistance of counsel claims are governed by the familiar two-part framework of *Strickland v. Washington,* 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient. *Id.* at 687; *Cannon v. Mullin,* 383 F.3d 1152, 1159 (10th Cir. 2004). Second, he must show that counsel's performance prejudiced his defense. *Strickland,* 466 U.S. at 687; *Cannon,* 383 F.3d at 1159. In order to establish that counsel's performance was deficient, the petitioner "must demonstrate that counsel's performance 'fell below an objective standard of reasonableness,' " meaning that it "was not 'within the range of competence demanded of attorneys in criminal cases.' " *Cannon,* 383 F.3d at 1159 (quoting *Strickland,* 466 U.S. at 687-88). To establish prejudice from counsel's deficient performance, the petitioner " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, ... the [jury] would have had a reasonable doubt respecting guilt.' " *Id.* (quoting *Strickland,* 466 U.S. at 694-95). " 'A reasonable probability is

4

a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland,* 466 U.S. at 694). Because the Kansas Court of Appeals already addressed Mr. Serrano's arguments by identifying the correct legal principles, the AEDPA confines this court's review to the question of whether the appeals court's decision involved an unreasonable application of *Strickland* or whether it was an unreasonable determination of the facts in light of the evidence presented.

Mr. Serrano argues that the Kansas Court of Appeal's application of *Strickland* was unreasonable when it found that his trial counsel, Mr. John Frydman,  was not deficient when he chose not to pursue a voluntary intoxication defense.   Mr. Serrano argues that Mr. Frydman's performance was deficient, falling below the objective standard of reasonableness, because his counsel did not know, research or familiarize himself with the elements of aiding and abetting rape and sexual exploitation of a child nor the voluntary intoxication defense to these crimes,  and counsel also failed to advise and discuss the same issues with his client. In support of his argument, Mr. Serrano cites *Sallahdin v. Gibson,* 275 F.3d 1211  (10th Cir. 2002). There, the Tenth Circuit reversed and remanded a case where, during the sentencing phase, trial counsel failed to present mitigation evidence regarding the effect of the defendant's steroid use on his behavior at the time of the alleged crime.  However, the Tenth Circuit did not find that trial counsel was deficient when it reversed and remanded the case, but instead the case was sent back to the district court for an evidentiary hearing to determine trial counsel's reasons, or lack thereof, for choosing not to present evidence regarding the defendant's steroid use.  *Id.* at 1240.  As the Tenth Circuit did not rule on trial counsel's

choice not to present a defense, *Sallahdin* is not persuasive for the proposition that Mr. Serrano's trial counsel was deficient.

Here, Mr. Serrano's defense counsel offered the rationale for his decision not to pursue a voluntary intoxication defense at the evidentiary hearing held on May 17, 2002, and the Kansas Court of Appeals considered Mr. Frydman's motivation when it found that he acted reasonably. Mr. Frydman made a strategic decision to pursue the defense that Mr. Serrano was unconscious during the commission of the major crimes, and therefore, he did not take part in them. Considering the case from trial counsel's perspective at the time of trial, the evidence and testimony presented at trial along with Mr. Serrano's insistence that he was not involved in the commission of the major crimes made such a strategy reasonable. *See Strickland* 466 U.S. at 696-97 (indicating that defendants must overcome the "strong presumption" that challenged decisions can be characterized as sound trial strategy).

During the May 17, 2002 post trial hearing, Mr. Frydman explained his defense strategy:

> The defense all along was that [petitioner's] involvement in whatever occurred at the apartment happened after he was unconscious, and he was simply passed out. He did not take part in any of the alleged rape, attempted rape, instructions to rape, anything like that. To defend a case I believe you cannot do what I term a scatter shot approach and throw everything out there and hope something sticks.

Mr. Serrano argues that Mr. Frydman should have argued Mr. Serrano's intoxication before his unconsciousness impaired his ability to form the specific intent required to aide and abet a rape that occurred during his unconsciousness. While such a defense may have been

6

possible, Mr. Frydman's failure to offer it was not unreasonable based upon Mr. Serrano's insistence that he was simply passed out and the fact that witnesses disagreed regarding testimony attributing drunken sexual suggestiveness to Mr. Serrano.

    As Mr. Frydamn explained:

> For someone to say something they don't intend it [sic] I believe is different than what was alleged in this case. Specifically tell somebody how to make a girl feel good and the totality of what was alleged here is not just some offhanded comment that might have been made in a drunken stupor. I think moreover this is what I call an abuse excuse. You know be it insanity defense, alcohol abuse, drug abuse. Jurors tend, it's my belief, to not accept those defenses. I don't think that if we look at the history of all the criminal cases that have been tried in Kansas that you will see that that defense has been successful very often. Not that it should be written off completely. In a valid defense you can have that and I have used it to success in very few occasions. This case I do not think would have been beneficial to [petitioner] for me to argue that. Again, I think I'd be arguing both sides of the coin and I don't think it would have helped.

    In a case where everyone agreed that Mr. Serrano made certain statements or actions, it might have been unreasonable not to offer a voluntary intoxication defense as it would be the only possible means for acquittal. However, that was not the case here, and therefore, it was reasonable for Mr. Frydman to defend on the theory that Mr. Serrano simply was not involved. Had Mr. Frydman pursued both a defense that Mr. Serrano was passed out and not involved, and a defense that if Mr. Serrano was involved, he was too intoxicated to form the intent required for the specific intent crimes, it might have appeared contradictory and could have undermined the credibility of the defense in the eyes of the jury.

The two most serious charges against petitioner were rape and aiding and abetting rape. Aiding and abetting is a specific intent crime, with voluntary intoxication as a defense. *See State v. Sterling*, 680 P.2d 301, 304 (1984). Rape, however, is a general intent crime where voluntary intoxication is not a defense. *See State v. Plunkett*, 934 P.2d 113, 118 (1997). When forming his strategy, Mr. Frydman had to consider the potential effect of a voluntary intoxication instruction on the rape charge. In hindsight, knowing that Mr. Serrano was acquitted of rape, one can speculate that there may not have been an effect, but the finding of ineffective assistance of counsel requires the court to view the circumstances from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689. It was not unreasonable for Mr. Frydman to believe that a voluntary intoxication defense to the specific intent crimes would make the jury more likely to convict on the rape charge where voluntary intoxication was not a defense because a jury could have believed that Mr. Serrano lacked the specific intent to aide and abet rape, but had the general intent necessary for a rape conviction.  Also, it was reasonable for Mr. Frydman to decline to use a voluntary intoxication defense believing, based upon his personal experience, that juries were unsympathetic to this defense.

As the Supreme Court noted in *Strickland,* "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal attorneys would not defend a particular client in the same way." *Id.* at 689. Thus, as previously noted, the court must "indulge a strong presumption ... that counsel's conduct was not the result of error or omission but derived instead from trial strategy." *Elliott v. Williams,* 248 F.3d 1205, 1208 (10th Cir. 2001) (internal quotations omitted).  The record demonstrates that Mr. Frydman's

8

decision was the product of trial strategy, not negligence. As such, Mr. Serrano cannot establish a violation of his Sixth Amendment rights. *See Bullock v. Carver,* 297 F.3d 1036, 1046 (10th Cir.2002) (explaining that where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes virtually unchallengeable).

Mr. Serrano also agues that his trial counsel was deficient because Mr. Frydman did not advise him of the availability of a voluntary intoxication defense. Mr. Frydman recalls discussing the strategic decision to pursue the defense that Mr. Serrano was unconscious during the commission of the rape and other major crimes and therefore did not take part in them, but he does not recall discussing voluntary intoxication with Mr. Serrano. Assuming that Mr. Frydman did not discuss a voluntary intoxication defense with Mr. Serrano, trial counsel was not deficient as tactical decisions should be made by counsel and not by a defendant. *See Vialpando v Soares*, 2005 WL 1499258 at *1 (10th Cir. Jun. 24, 2005) (finding trial counsel was not deficient when he chose not to personally interview the victim's mother or call her as a witness after having read a possibly exculpatory letter from her because it was purely a tactical decision "within the purview of the defense counsel, and not a decision to be made by the client"); *Young v. Workman*, 383 F.3d 1233, 1241 (10th Cir. 2004) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's [tactical decisions]...").

The court need not address the second prong of the *Strickland* test because Mr. Serrano has been unable to show ineffective assistance of counsel.[2]   *See Strickland,* 466 U.S. at 697. For all the reasons given above, the court denies Mr. Serrano's habeas corpus petition sought under 28 U.S.C. § 2254.

---

[2]   The court notes that even if Mr. Frydman's performance was constitutionally deficient, Mr. Serrano has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 496. Mr. Serrano cites *Medina v. Barnes*, where the Tenth Circuit found that there was prejudice when trial counsel failed to discover evidence that linked the victim of a murder to the government's principal witness through previous criminal activity and where the criminal activity went to the heart of the witness' credibility. 71 F.3d 363, 369 (10th Cir. 1995). Also, during the deliberations in *Medina*, the jurors indicated that they might not be able to reach a unanimous verdict. *Id.* The facts of *Medina* are significantly different from those presented here, and the court finds that the case is not useful for determining prejudice in the current case. In a case such as this where the petitioner merely speculates that the result might have been different, the petitioner has failed to show by a reasonable probability that the results would have different. *See Hale v. Gibson*, 227 F.3d 1298, 1325 (10th Cir. 2000) (holding that the petitioner failed to show prejudice when trial counsel failed to object to an improper jury instruction because it was based on mere speculation that the jury might have returned a lesser prison sentence had the death penalty not been an option).

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 (Doc. # 1) is denied.

**IT IS SO ORDERED** this 13th day of July, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge